Filed 6/25/21  P. v. Mariscal CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H047243 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1891605) |
| v. | ORDER MODIFYING OPINION NO CHANGE IN JUDGMENT |
| CARLOS MARISCAL, | |
| Defendant and Appellant. | |

BY THE COURT:

It is ordered that the opinion filed herein on June 3, 2021, be modified as follows:

On page 7, before the first full paragraph, insert the following paragraph:

Mariscal also claims that, during rebuttal argument, the prosecutor improperly impugned the integrity of defense counsel by stating the following:  "This idea that there was a thorough investigation is an attempt to deflect you from, again, Mr. Mariscal's conduct . . . if the case didn't involve Mr. Esparza and it involved only the possession of the knife and the defendant in this case, defense would be up here telling you how poor this investigation was . . . .  But suddenly if the crux of the victim in this case rides on his viewing of a knife, let's call that investigation thorough."

On page 8, after the final full paragraph, insert the following two paragraphs:

We also disagree that the prosecution's rebuttal argument relating to defense counsel's description of the police investigation rose to the level of objectionable misconduct.  First, we set forth the prosecutor's statements on this subject in their entirety:  "This idea that there was a thorough investigation is an attempt to deflect you

1

from, again, Mr. Mariscal's conduct, because ladies and gentlemen, I'd argue that if the case didn't involve Mr. Esparza and it involved only the possession of the knife and the defendant in this case, defense would be up here telling you how poor this investigation was because they didn't find the knife. They didn't find the knife. What a poor investigation. [¶] But suddenly if the crux of the victim in this case rides on his viewing of a knife, let's call that investigation thorough, oh, they did a thorough investigation. There was a single block that encompassed an entire elementary school and you want to find a six-inch knife. [¶] A weedwhacker, that's about six to eight feet long, got a big motor on it. It's not something you're easily throwing over a house into the yard, over the fence, dumping into a trash can. But a knife, it's a needle in a haystack. But this is a thorough investigation, that's why we didn't find a knife. So there must be no knife."

It is of course improper for a prosecutor to attack the integrity of defense counsel, but in evaluating such claims we must determine whether the prosecutor's remarks "were a fair response to defense counsel's remarks." (*People v. Young* (2005) 34 Cal.4th 1149, 1189.) Viewed in their entirety and in context of the prosecutor's rebuttal arguments on this subject, it is clear that the prosecutor's comments were directed at undermining defense counsel's efforts to convince the jury that, because police did not locate a knife in the area despite a thorough investigation, Mariscal did not in fact possess a knife. As a result, defense counsel reasonably elected not to object.

There is no change in the judgment. Appellant's petition for rehearing is denied.

Dated _____                    _____
                                           Greenwood, P.J.




_____
  Elia, J.




_____
  Grover, J.




People v. Mariscal
No. H047243

3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>CARLOS MARISCAL,<br><br>　　Defendant and Appellant. | H047243<br>(Santa Clara County<br>Super. Ct. No. C1891605) |

Defendant Carlos Mariscal was found guilty by a jury of one count of second-degree robbery (Pen. Code, § 212.5)[1] and was sentenced to three years in state prison.

On appeal, Mariscal argues that a number of the prosecutor's remarks during final argument amounted to prosecutorial misconduct and his trial counsel was constitutionally ineffective for failing to object to them.  As explained below, we conclude there was no misconduct and thus no duty to object, but even if there were, Mariscal was not prejudiced.  Therefore, we will affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Procedural Background*

On April 18, 2019, Mariscal was charged by information with second-degree robbery (§ 212.5, subd. (c)).  The information further alleged that Mariscal personally

---

[1] Unspecified statutory references are to the Penal Code.

1

used a deadly weapon (a knife) during the robbery (§ 12022, subd. (b)(1)) and that he had suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12).

On June 12, 2019, a jury found Mariscal guilty of second-degree robbery, but found not true the allegation that he personally used a knife in committing the offense. In a bifurcated proceeding, the trial court found true the allegation that Mariscal had a prior strike conviction.

After granting Mariscal's *Romero*[2] motion, the trial court sentenced him to the middle term of three years in prison with total credits of 187 days, consisting of 163 days custody credits plus 24 days of credits pursuant to section 2933.1. The trial court imposed a restitution fine of $300 (§ 1202.4, subd. (b)), with an identical parole revocation fine imposed but suspended (§ 1202.45), a $40 court operations assessment (§ 1465.8), a $30 criminal conviction assessment (Gov. Code, § 70373), a criminal justice administration fee of $129.75 payable to the City of San Jose (Gov. Code, §§ 29550, 29550.1, 29550.2), and a $10 crime prevention fund fine plus $31 penalty assessment (§ 1202.5). Pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 the court stayed all fines, fees, and assessments based on the prison sentence and Mariscal's unemployment.

Mariscal timely appealed.

### B. Evidence Presented at Trial

#### 1. The Prosecution Case

Pedro E.[3] testified that, on March 29, 2018, he was practicing soccer with his coworker, Oscar F., on the field at an elementary school in San Jose. Pedro E. and Oscar F., who worked for a landscaping company, had finished work for the day.[4]

---

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

[3] We refer to the victim and the other eyewitness by their first names and last initials in order to preserve their anonymity. (Cal. Rules of Court, rule 8.90(b)(4), (10).)

[4] The landscaping company was owned by Oscar F.'s father, but Pedro E. testified that everyone pooled their money to purchase equipment and supplies for the business.

Pedro E. parked his car, which contained "a lawnmower, blower, a weedwhacker," and other landscaping tools and equipment, in the parking lot by the soccer field. The lawnmower did not fit fully inside the trunk, so Pedro E. secured it with a rope. As a result, the trunk was half open.

As they practiced, Oscar F. noticed a person, later identified as Mariscal, riding a bicycle in circles around the parking lot and he thought it was suspicious. Pedro E. walked over to talk to Mariscal. Mariscal told him he was "just checking out [a] girl" who was at the soccer field. Pedro E. used the restroom, then returned to the field.

Oscar F. then informed Pedro E. that Mariscal was coming back on foot. Pedro E. could see that Mariscal had left his bicycle outside a nearby fence and was walking back to the parking lot toward Pedro E.'s vehicle. Pedro E. returned to the parking lot, and asked Mariscal what he was doing. At this point, Mariscal was near the back of Pedro E.'s car and Pedro E. was in front of his car. Mariscal took the weedwhacker out of the trunk. Pedro E. stepped toward him and asked, " 'Hey, what are you doing?' " Mariscal pulled out a knife from the "side of his shorts," and thrust it toward Pedro E., saying, " 'Don't get close to me, you know, I'll use it.' "[5] Pedro E. was afraid and told Mariscal to "take it." He believed that Mariscal would use the knife if he tried to get the weedwhacker back.

Mariscal ran off with the tool and got on his bicycle. Pedro E. got into his car and called 911. Oscar F. testified that when he and Pedro E. got into the car, Pedro E. "was pretty scared." Pedro E. and Oscar F. began to follow Mariscal, relaying their position to the dispatcher, and eventually they saw Mariscal standing with his bicycle by an

---

[5] There was conflicting evidence on this point. During the 911 call, Pedro E. told the dispatcher that Mariscal had pulled out a knife and told him to "walk away." When he spoke to police just after Mariscal was detained, Pedro E. denied that Mariscal pulled out a knife, saying " 'No. No. He just had it right here [in his waistband].' " At the preliminary hearing, Pedro E. testified that Mariscal "had taken the knife out of his waist [*sic*] and . . . put it in front of him like he was going to use the weapon."

apartment complex. Mariscal appeared to be breathing hard, but he no longer had the weedwhacker.[6] Pedro E. saw the police arrive and take Mariscal into custody. Pedro E. identified Mariscal at the scene as the person that took the weedwhacker from the trunk of his car.

San Jose Police Detective Alejandro Ortiz, along with other officers, responded to Pedro E.'s 911 call with lights and siren activated. Ortiz testified that police did not find a knife on Mariscal when he was arrested, nor did police recover a knife anywhere in the vicinity that day. However, Ortiz also testified that it is not uncommon for suspects to discard weapons or other evidence of crime because "[n]obody wants to be arrested with something that they just committed a crime with."

### 2. The Defense Case

Mariscal presented no evidence in his defense.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

Mariscal argues his trial counsel was ineffective for failing to object to multiple instances of prosecutorial misconduct during final argument. According to Mariscal, that misconduct consisted of the prosecutor "denigrat[ing] defense counsel, misstat[ing] the law, and improperly play[ing] to the jurors' sympathies." We conclude the prosecutor's statements did not constitute misconduct and, even if they did, Mariscal cannot show he was prejudiced by them.

### 1. Applicable Legal Principles

"Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.) To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish both that

---

[6] Police officers recovered the weedwhacker from behind a bush near the apartment complex.

4

his counsel's performance was deficient and that he suffered prejudice.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).)  The deficient performance component of an ineffective assistance of counsel claim requires a showing that "counsel's representation fell below an objective standard of reasonableness. [¶] . . . under prevailing professional norms." (*Id.* at p. 688.)

With respect to prejudice, a defendant must show "there is a reasonable probability"—meaning "a probability sufficient to undermine confidence in the outcome"—"that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, *supra*, 466 U.S. at p. 694.)  We "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." (*Id.* at p. 697.)

A prosecutor engages in prosecutorial misconduct under state law if he or she uses deceptive or reprehensible methods to attempt to persuade either the trial court or the jury.  (*People v. Morales* (2001) 25 Cal.4th 34, 44 (*Morales*).)  When the alleged prosecutorial misconduct stems from the prosecutor's remarks or comments made before the jury, "the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.)

To find prosecutorial error, we must view the challenged statements in the context of the entire argument and the jury instructions to determine whether there was a reasonable likelihood the jury understood or applied the comments in an improper or erroneous manner.  (*People v. Cortez* (2016) 63 Cal.4th 101, 130-131.)  "If the challenged comments, viewed in context, 'would have been taken by a juror to state or imply nothing harmful, [then] they obviously cannot be deemed objectionable.' " (*Id.* at p. 130)  " 'In conducting this inquiry, we "do not lightly infer" that the jury drew the

5

most damaging rather than the least damaging meaning from the prosecutor's statements. ' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667 (*Centeno*).)

### 2. Prosecutor's Final Argument

#### a. The Claimed Denigrating or Disparaging Statements

During closing, the prosecutor made the following remarks which Mariscal contends denigrated defense counsel, specifically regarding her examination of Pedro E.: (1) "[A]t one point when [Pedro E.] was being badgered in his examination, did you notice that he got a little emotional"; (2) "[I]t might be fun to poke fun at [Pedro E.] and be 'Oh, . . . I got you.  Were you being truthful then?  Are you being truthful now?' "; (3) "[Pedro E.] got to get re-victimized by recounting what it is that happened on that date"; and (4) "[A]bsolutely the facts in this case come from [Pedro E.].  But to come in here and make an indictment on [Pedro E.] when he tells you, 'I don't remember the exact words.' "

The prosecutor made the following additional remarks which Mariscal claims personally denigrated defense counsel:  (1) "[T]he burden [of proof] is on the People. And so *the proverbial potted plant*, the defense has no obligation to put on any evidence. [¶] But the minute they start asking questions, you can look to the nature of those questions, the responses they're eliciting and even the argument you just heard with the same critical eye as you would to me, as the prosecution, who has the burden in this case"; and (2) "I impress upon you to hold me to that burden so much so that I didn't put up a gimmicky map or graph, because I know that you're going to get the instructions exactly as the Court says you need to receive the law in this case."  (Italics added.)

Mariscal also notes the following times the prosecutor accused defense counsel of seeking to distract the jurors, deflect from the relevant evidence, and distort the issues: "This is ultimately the defense in the case, ladies and gentlemen.  It's to distract you, deflect you from the issues in this case and distort the actual issues of this case"; "Are these actually issues of relevance in this case or are you just being distracted from what

6

actually is the issue here, from that man's conduct in this case?"; "Is that only meant to distract you? [¶] It is."; "Are you being distracted though by that argument? I think there's been some deflection that's happening in this case, this idea that we didn't locate the knife"; "This idea that there was a thorough investigation is an attempt to deflect you from, again, Mr. Mariscal's conduct . . . ."; "Ladies and gentlemen, that's a deflection of the roles in this case, what's actually at issue here"; and "So, again, is the argument simply distorting the issues here?"

Under California law, "[i]t is misconduct for the prosecutor in argument to impugn the integrity of defense counsel or to suggest defense counsel has fabricated a defense." (*People v. Cash* (2002) 28 Cal.4th 703, 732.) In addressing a claim of prosecutorial error based on disparagement or denigration of defense counsel, we ask whether the prosecutor's comments were a fair response to the remarks of defense counsel. (*People v. Pearson* (2013) 56 Cal.4th 393, 431-432.)

A prosecutor's observation " ' "that an experienced defense counsel will attempt to 'twist' and 'poke' at the prosecution's case does not amount to a personal attack on counsel's integrity." ' " (*People v. Wilson* (2005) 36 Cal.4th 309, 338-339.) Even going so far as to characterize defense's counsel's argument as " 'ridiculous' " and " 'outrageous' " is not misconduct. (*People v. Peoples* (2016) 62 Cal.4th 718, 793.)

Having examined the prosecutor's allegedly disparaging remarks about defense counsel's examination of Pedro E., we conclude—in the context of the record—those remarks were not misconduct. Rather, the prosecutor was attacking defense counsel's efforts to undermine Pedro E.'s credibility, seeking to refocus the jury on the essence of Pedro E.'s testimony and his demeanor on the stand rather than inconsistencies revealed by the defense. This was proper argument and not an unfair attack on defense counsel's integrity.

Similarly, in the context of this closing argument, we read the reference to the defense as the "proverbial potted plant" as an inartful attempt to characterize for the jury

7

how, in general, the burden of proof in a criminal trial is borne by the prosecution, while the defense may rightfully present no evidence, but base its argument for acquittal on the deficiencies in the prosecution's case.  Even if a negative association could be drawn from this statement, it is unlikely jurors would do so, especially given defense counsel's vigorous and effective examination of Pedro E.  While it is possible the jury " 'drew the most damaging rather than the least damaging meaning from the prosecutor's statements,' " we will not " ' "lightly infer" ' " it did so.  (*Centeno*, *supra*, 60 Cal.4th at p. 667.)[7]

The prosecutor's numerous references to defense counsel's tactics as efforts to distract, detract (from), and distort the issues also do not improperly disparage defense counsel.  (See *People v. Taylor* (2001) 26 Cal.4th 1155, 1166 [prosecutor referring to defense "tricks" or "moves" in questioning witness credibility do not amount to improper personal attack on defense counsel's integrity].)  The prosecutor's message was that the jury should not doubt Pedro E's credibility merely because defense counsel's cross-examination revealed inconsistencies in Pedro E.'s testimony.  The prosecutor did not accuse defense counsel of factually deceiving the jury or fabricating evidence.  (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1152 [no misconduct where prosecutor called defendant's argument " 'lawyer's game' "], disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)  It is not misconduct to "simply point[] out that attorneys are schooled in the art of persuasion" as opposed to "improperly imply[ing] that defense counsel was lying."  (*People v. Gionis* (1995) 9 Cal.4th 1196, 1216 (*Gionis*).)  As a result, we conclude defense counsel's decision not to object to these statements during final argument was reasonable.

_____

[7] Although we conclude the prosecutor's remarks here do not rise to the level of misconduct, we would encourage all counsel to be mindful of the language they use in the courtroom.  Words like "badgering" invite unnecessary negative connotations by the finder of fact and thus add heat to, but shed little light on, the important questions to be resolved.

8

### b. The Claimed Appeals to Sympathy and Fear

Mariscal points to the following statements as improper appeals to the jurors' sympathy and as an attempt to elicit fear: (1) "If you think that someone who isn't as smart and sophisticated and savvy as an attorney doesn't enjoy the protection of the law . . . come back with a verdict of an acquittal. [¶] If [Pedro E.] doesn't deserve the protections of the law, ultimately—I submit to you—that's what's being asked of you, because he gave different answers and he gave different accounts"; and (2) "My hope is that you don't have to experience this more serious type of theft. When someone uses force or fear and makes you feel that you're going to get hurt or that your life is in danger the same way that [] Mariscal did to the victim, [Pedro E.], in this case."

A prosecutor may not make a Golden Rule argument by appealing " 'to the sympathy or passions of the jury' " and " 'urging them to imagine the suffering of the victim.' " (*People v. Vance* (2010) 188 Cal.App.4th 1182, 1192 (*Vance*).) "[A]n appeal to the jury to view the crime through the eyes of the victim is misconduct at the guilt phase of trial; an appeal for sympathy for the victim is out of place during an objective determination of guilt." (*People v. Stansbury* (1993) 4 Cal.4th 1017, 1057.)

The first statement implying that Mariscal should be acquitted if the jurors thought "that someone who isn't as smart and sophisticated and savvy as an attorney doesn't enjoy the protection of the law" was not an appeal to their sympathy, nor could it be characterized as either a "deceptive or reprehensible method[] to attempt to persuade . . . the jury" of Mariscal's guilt. (*Morales*, *supra*, 25 Cal.4th at p. 44.) Again, the prosecutor was seeking to rehabilitate Pedro E.'s credibility by pointing out "that attorneys are schooled in the art of persuasion." (*Gionis*, *supra*, 9 Cal.4th at p. 1216.) Accordingly, there was no reasonable basis for defense counsel to object.

The second statement, in which the prosecutor expressed his "hope" that none of the jurors will ever be victims of a robbery and "feel that you're going to get hurt or that your life is in danger" like Pedro E., presents a closer question. Upon hearing a statement

9

like this, some people would naturally imagine how it *would* feel to have one's life threatened. The next logical step for them would be to consider that the victim likely experienced feelings similar to their own. At this point, the person is empathizing with the victim's emotional state, something the prosecution should not directly invite.

While better left unsaid, the prosecutor's remarks on this matter were brief and anodyne. They do not come anywhere near the emotional assault launched by the prosecutor in a case like *Vance*, *supra*, 188 Cal.App.4th at pages 1194 and 1195 [prosecutor committed misconduct by describing suffocation victim's last feelings in graphic detail and telling jurors it was their duty to " 'relive' " them]. "[A] few [such] remarks in a much longer closing argument" generally will not prejudice the defendant. (See *People v. Seumanu* (2015) 61 Cal.4th 1293, 1344 [considering prosecutor's brief victim impact statements in case with strong evidence of guilt].) The appeal to view the offense through Pedro E.'s eyes was tangential at best, and as a result, defense counsel was reasonable in not objecting to the prosecutor's remarks.

### c. The Claimed Appeals to the Desire to Punish Crime

Mariscal cites the following two statements as improper appeals to the jurors' desire to ensure that law and order prevail: (1) "It would make sense that someone doesn't get a pass for . . . robbery because we don't find the weapon on them, right?"; and (2) "[W]hat we're recognizing here, what the law is acknowledging and what we're saying as a society that we won't accept is for a man to use force or fear to take something away from someone else."

It "is permissible [for a prosecutor] to comment on the serious and increasing menace of criminal conduct and the necessity of a strong sense of duty on the part of jurors. [Citation.] The prosecution may properly urge his points vigorously as long as he does not act unfairly." (*People v. Escarcega* (1969) 273 Cal.App.2d 853, 862-863.)

The prosecution's statements were not unfair efforts to spark fear or anger among the jurors. Rather, they were efforts to explain the force or fear element of robbery to the

10

jury and help it understand that element does not require a finding that Mariscal pulled a knife out of his waistband or that the police recovered a weapon. There was nothing inflammatory or inaccurate in the prosecutor's remarks and thus there was no reason for defense counsel to object to them.

### d. The Claimed Misstatement of Law

Finally, Mariscal contends the prosecutor misstated the law on lesser-included offenses, as follows: "I want to talk about the lesser included [offense of petty theft] that you've been instructed on. [¶] And the law is going to bend over backward to make sure all [of] the defendant's rights are realized. That's not a critique, that's how it should be. But that doesn't mean that everything you get as an instruction or the law is actually relevant to this case. [¶] So much so that the very first instruction you were read was 'Some of these instructions may not apply.' [¶] So you will receive the instruction of the lesser-included theft offense. But you have to come to a unanimous verdict of not guilty as to the charged Count 1 robbery first. [¶] *You can't consider the petty theft until you all agree, frankly, that everything I'm saying is wrong*." (Italics added.)

"It is misconduct for a prosecutor to misstate the law during argument." (*People v. Otero* (2012) 210 Cal.App.4th 865, 870.) Mariscal argues the prosecutor's argument misstated the law on lesser-included offenses pronounced in *People v. Kurtzman* (1988) 46 Cal.3d 322 (*Kurtzman*), in which the California Supreme Court held the jury may not return a verdict on a lesser offense unless it has agreed beyond a reasonable doubt that the defendant is not guilty of the greater crime charged. However, the *Kurtzman* court also concluded the jury should not be prohibited from *considering* the lesser offenses before returning a verdict on the greater offenses. (*Id*. at p. 329.) The prosecutor's statement here, i.e., that the jury could not "consider the petty theft" unless there was unanimous agreement that Mariscal was not guilty of robbery, was plainly a misstatement of the law.

This misstatement, however, was harmless. Prior to the prosecutor delivering his final argument, the trial court instructed the jury on lesser-included offenses with

11

CALCRIM No. 3517: "If all of you find that the defendant is not guilty of the greater charged crime of robbery, you may find him guilty of the lesser crime of petty theft if you are convinced beyond a reasonable doubt that the defendant is guilty of that lesser crime. [¶] A defendant may not be convicted of both a greater and lesser crime for the same conduct. [¶] Petty theft is a lesser crime of robbery as charged in Count 1. *It is up to you to decide the order in which you will consider each crime and the relevant evidence. But I can accept a verdict of guilty of a lesser crime*, *only if you have found the defendant not guilty of the corresponding greater crime*." (Italics added.) The trial court also instructed the jury pursuant to CALCRIM No. 200 that "If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." The jury was provided written copies of these instruction to reference during deliberation.

As noted, under the *Kurtzman* rule, a trial court may not prohibit the jury from considering or discussing the lesser offenses before returning a verdict on the greater offenses. (*Kurtzman*, *supra*, 46 Cal.3d at p. 329.) Mariscal cannot demonstrate prejudice from the prosecutor's statements because the trial court expressly instructed the jurors that it was up to them "*to decide the order in which you consider each crime and the relevant evidence. But I can accept a verdict of guilty of a lesser crime, only if you have found the defendant not guilty of the corresponding greater crime.*" (Italics added.) The jury was further instructed that if it believed an attorney's comments on the law conflicted with the court's instructions, it must follow the court's instructions. " '[W]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.' " (*People v. Osband* (1996) 13 Cal.4th 622, 717, quoting *People v. Clair* (1992) 2 Cal.4th 629, 663, fn. 8.)

Because the jury was correctly instructed with CALCRIM No. 3517 (and CALCRIM No. 200), Mariscal cannot establish prejudicial prosecutorial misconduct and thus defense counsel reasonably elected not to object.

12

### 3. *Mariscal Was Not Prejudiced by Counsel's Failure to Object*

Even if we assume for argument's sake that defense counsel's failure to object to any of the prosecutor's final argument was constitutionally deficient, Mariscal cannot demonstrate prejudice. The prosecution's case included uncontested percipient testimony from both the victim, Pedro E., and his coworker, Oscar F., that confirmed the force and fear element of robbery. The record here reflects that Mariscal fled the scene, discarding the weedwhacker (and perhaps a knife) before he was arrested. The only real question—resolved in Mariscal's favor—was whether he personally used[8] a knife in committing the robbery.

The jury deliberations were also brief and provide no indication that the jury struggled with any of the factual disputes in the case or the credibility of any of the witnesses. (See *People v. Merriman* (2014) 60 Cal.4th 1, 99-100.) In sum, even if counsel's performance was deficient, there was no resulting prejudice to Mariscal. (*Strickland*, *supra*, 466 U.S. at p. 687.)

### III. DISPOSITION

The judgment is affirmed.

---

[8] The jury was instructed that "[s]omeone personally uses a dangerous or deadly weapon if he or she intentionally . . . [d]isplays the weapon in a menacing manner."

_____

Greenwood, P.J.

WE CONCUR:

_____

 Elia, J.

_____

 Grover, J.

People v. Mariscal
No. H047243

14